```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
THE ANNUITY, WELFARE and APPRENTICESHIP          :
SKILL IMPROVEMENT & SAFETY FUNDS of the          :
INTERNATIONAL UNION OF OPERATING                 :
ENGINEERS, LOCAL 15, 15A, 15C and 15D, AFL-CIO,  :
by its TRUSTEES JAMES T. CALLAHAN, FRANCIS P.    :
DIMENNA, ROBERT SHAW and JOHN BRUNETTI,          :         AMENDED
                                                 : REPORT AND RECOMMENDATION[1]
                  Plaintiffs,                    :
                                                 :    12 Civ. 436 (LGS)(KNF)
           -against-                             :
                                                 :
INTEGRATED STRUCTURES CORPORATION,               :
                                                 :
                                                 :
                  Defendant.                     :
------------------------------------------------------------------------X
```

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE LORNA G. SCHOFIELD, UNITED STATES DISTRICT JUDGE

Plaintiffs James T. Callahan, Francis P. Dimenna, Robert Shaw and John Brunetti, as trustees ("trustees") of the Annuity, Welfare and Apprenticeship Skill Improvement & Safety Funds of the International Union of Operating Engineers, Local 15, 15A, 15C and 15D, AFL-CIO ("trust funds"), brought this action against Integrated Structures Corporation ("ISC"), seeking monetary damages, based on ISC's failure to make fringe benefit contributions to the trust funds, as required by: (1) a collective bargaining agreement ("CBA"); (2) the Local 15 Trust Agreement ("trust agreement"); and (3) the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461.

On January 19, 2012, the plaintiffs commenced this action by filing a complaint with the Clerk of Court. On May 3, 2012, the Honorable Paul A. Engelmayer issued an Order "that defendant[, ISC,] communicate forthwith to the Court explaining, in writing, why it has failed to

---

[1]This Report and Recommendation was amended solely to indicate that Judge Lorna G. Schofield is the district judge assigned to this case.

answer or otherwise respond to the complaint in this action." ISC never responded to the May 3, 2012 Order. Accordingly, on June 8, 2012, Judge Engelmayer issued an Order entering a judgment, by default, against ISC. Thereafter, Judge Engelmayer referred the matter to the undersigned for an inquest, to determine the amount of damages, if any, that should be awarded to the plaintiffs.

The Court directed the trustees to serve and file proposed findings of fact and conclusions of law, and an inquest memorandum setting forth their proof of damages. In support of their request for damages, the trustees submitted: (1) their proposed findings of fact and conclusions of law; (2) a document styled "Memorandum of Law in Support of An Award of Monetary Damages Against Defendant Integrated Structures Corporation"; (3) the declaration of their counsel, Matthew G. McGuire, Esq. ("McGuire"); (4) a copy of the CBA executed by the International Union of Operating Engineers Local 15, 15A, 15C & 15D, AFL-CIO ("union") and ISC; (5) a copy of the trust agreement; (6) a copy of the February 13, 2012 audit report prepared by Armao Costa & Ricciardi Certified Public Accountants, P.C. ("Armao Costa"), the accounting firm employed by the trustees to audit ISC's records for the period relevant to the instant action; (7) a copy of the "Wage Scale Schedule[s]" effective during the periods July 1, 2007, through June 30, 2008, July 1, 2008, through June 30, 2009, and July 1, 2009, through June 30, 2010; (8) a copy of the trust funds' "Collection and Audit Procedures"; (9) a "synopsis" of the hours expended by counsel to the trustees in prosecuting this action; and (10) documents identifying the fees Armao Costa charged the trustees, the fee the trustees incurred to file this action with the Clerk of Court and the trustees' process server's fees.

The defendant made no submission in connection with the inquest, although it was directed to do so via the Court's June 27, 2012 Order.

**BACKGROUND**

Based upon the Court's review of the record, the following findings of fact are made:

The trust funds are multi-employer labor management trust funds, organized and operated pursuant to the CBA reached between the union and ISC. The trust funds are also employee benefit plans, within the meaning of ERISA § 1002(3), (37). The trust funds provide fringe benefits to eligible participants, such as: (a) health insurance; (b) a defined contribution retirement plan; and (c) industry-related skill-improvement courses. The trust funds also serve as the collection agent for "union assessment (dues checkoff)" and political action committee payments, which are remitted from contributing employers on behalf of those union members who have authorized such payments. In addition, the trust funds are the administrative representative for the International Union of Operating Engineers, Central Pension Fund ("Central Pension Fund"), and are responsible for collecting and forwarding to the Central Pension Fund, the contributions which finance the defined benefit retirement plan for eligible union members.

Pursuant to the CBA between ISC and the union, of which the trust funds are third-party beneficiaries, ISC was required to make fringe benefit contributions for each hour of work performed by eligible members it employed. These contributions were made through fringe benefit stamps ISC purchased from the trust funds. Each benefit stamp contains an amount allocatable to specific fringe benefit categories, such as the above-referenced retirement plan. At the end of each week, ISC was required to provide each employee stamps commensurate with the number of hours the employee worked. Thereafter, the employee would redeem the stamps – no less than three times per year – at the trust funds' office, to receive credit towards his or her various fringe benefit fund accounts.

Pursuant to the trust agreement, the trustees are authorized to examine the payroll records of contributing employers, such as ISC, to ensure that each employer is making the required fringe benefit contributions. At the trustees' request, ISC produced employment records for an audit spanning the period July 1, 2007, through June 30, 2010. Armao Costa audited those records and reported its findings to the trustees. Armao Costa calculated the number of hours worked by each employee covered by the CBA and multiplied that number by the appropriate fringe benefit rate(s) to determine the amount of fringe benefit contributions ISC was required to make. Armao Costa compared the fringe benefit contributions reflected in ISC's records to the amount of contributions it determined should have been made by ISC, to ascertain whether a deficiency existed. The fringe benefit rates, upon which Armao Costa relied when making its calculations, were derived from the Local 15 & 15A Wage Scale Schedules in effect during the period audited; the relevant rates are noted below:

> For the period of July 1, 2007 through June 30, 2008, the applicable fringe benefit rates . . . were $24.07 for each regular hour of work performed and $42.99 for each overtime hour of work performed. For the period of July 1, 2008 through June 30, 2009, the applicable fringe benefit rates . . . were $25.48 for each regular hour of work performed and $45.56 for each overtime hour of work performed. For the period of July 1, 2009 through June 30, 2010, the applicable fringe benefit rates . . . were $26.89 for each regular hour of work performed and $48.13 for each overtime hour of work performed.

Armao Costa produced an audit report dated February 13, 2012, based on its review of ISC's records. The report indicates that fringe benefit contributions of $2,734.00[2] are owed to the trust funds, for the period July 1, 2007, through June 30, 2010, as indicated in the report's chart entitled:

---

[2] When the trustees calculated the amounts owed to the funds, it appears that they rounded each dollar amount upward, to the nearest whole number. However, the trustees have not provided any authority that would warrant them in calculating the outstanding contributions in this manner. Accordingly, the Court has elected to use the exact dollar amounts which result from multiplying the number of hours for which ISC failed to make contributions, by the applicable rate(s). Based on the information submitted by the trustees, the total amount of delinquent contributions, when the calculations are made with exact figures, is $2,733.49.

"Unpaid Contributions During the Audited Period, Exact Figures," which is reproduced below.

**Unpaid Contributions During the Audited Period, Exact Figures**

| Audited Period | Unpaid Regular Hours | Unpaid Double Time Hours | Unpaid Regular hour rates | Unpaid Double Time rates | Total amount Owed |
|---|---|---|---|---|---|
| July 1, 2007- June 30, 2008 | 0.00 | 4.00 | $24.07 | $42.99 | $ 171.96 |
| July 1, 2008- June 30, 2009 | 28.00 | 19.50 | $25.48 | $45.56 | $1,601.86 |
| July 1, 2009- June 30, 2010 | 16.00 | 11.00 | $26.89 | $48.13 | $ 959.67 |
| | | | | Total | $2,733.49 |

In accordance with the CBA, if an employer fails to make the appropriate fringe benefit contributions, it may be required to pay interest on the outstanding contributions. The trust funds' Collection and Audit Procedures state the following:

> Employers shall make fringe benefit contributions by the purchase of a consolidate stamp from the Fund Office. Said stamps shall be placed in the employees' weekly pay envelopes, and shall be remitted to the Fund Office three (3) times per year: March and April, July and August, November and December. Further, pursuant to the terms of the applicable CBA, each Employer is required to submit a report of hours worked by its employees, along with the names and social security numbers of said employees. In the event a member/employee informs the Fund Office, Trust or Union Representative that he has not received his stamps in his weekly pay envelope, or the information contained on the Employers [sic] hours worked report disclose a deficiency, then the Local 15 Funds shall consider the Employer to be delinquent and the Fund Administrator shall cause a delinquency notice to be sent via first class mail to the delinquent Employer. The notice shall advise the Employer that the contributions must be received within ten (10) days of the date of the notices so as to avoid interest, legal fees and penalties . . . [i]nterest shall

> accrue on delinquent contributions from the due date at the prime rate, plus one percent . . . [i]f an employer has not made the remittance within ten (10) days from the date of the Notice, the Fund Administrator shall refer the matter to the Fund's legal counsel for collection.

Pursuant to the CBA, the interest on the unpaid contributions is 4.25 percent, derived from the current prime rate, which is 3.25 percent, plus 1 percent. According to the trustees, the amount of interest owed on unpaid contributions is $295.52, "calculated as follows: (1) $272.00 in prejudgment interest calculated at the rate of 4.25% on the principal sum of $2,734.00 through the date that the audit report was issued (February 13, 2012)[;] and (2) $23.52 in additional prejudgment interest calculated at the rate of 4.25% on the principal sum of $2,734.00 from February 14, 2012 through April 27, 2012 (the date of the instant motion)."

The trustees also seek attorney's fees of $3,952.25, audit fees of $626.00 and costs of $392.50. In support of their request for attorney's fees, the trustees provided a reproduction of the Brady McGuire & Stein, P.C. law firm billing records, which identify the: (1) initials of the attorney who worked on this matter, McGuire; (2) dates on which work was performed; (3) 12.75 hours McGuire expended on this matter; and (4) nature of the work performed. McGuire's hourly rate for legal services is $310.00. However, no information regarding McGuire's experience and qualifications was provided to the Court.

The trustees submitted a document headed "International Union of Operating Engineers Local Union 15 Employee Fringe Benefit Funds Integrated Structures Corp. Schedule of Audit Fees By Contract Period For the Period July 1, 2007 to June 30, 2010," with respect to their audit fees request. That document identifies the fees Armao Costa charged the trustees, as follows: (i) $39.00, for reviewing ISC's records covering the period July 1, 2007, to June 30, 2008; (ii) $367.00, for reviewing ISC's records covering the period June 1, 2008, to June 30, 2009; and

(iii) $220.00, for reviewing ISC's records covering the period July 1, 2009, to June 30, 2010. The trustees also submitted the audit report prepared by Armao Costa, which details: (1) the procedures it followed in conducting the audit; and (2) its findings. In conducting the audit, Armao Costa

> compared the employer's payroll records for the period July 1, 2007 to June 30, 2010, with payroll reported on the employer's quarterly payroll tax returns to determine that the employer presented all payroll records for review. [It] compared total payroll hours for 37 participants to total stamp purchases and total stamp redemptions to determine that they are in accordance with the Collective Bargaining Agreement. Total Payroll hours include hours for participants redeeming stamps, or appearing on remittance reports. Any stamp hours not redeemed at the time the procedures are performed are credited to the appropriate participant. [Armao Costa] compared the employer's payroll records with the Collective Bargaining Agreement to determine that pay rates were in accordance with the job classifications and rates of pay listed on The Schedule of Equipment Classification. [In addition, Armao Costa] reviewed the employer's general ledgers, cash disbursement journals, corporate tax returns, and invoices to determine if there were unreported earnings of individuals for work performed which is covered by the Collective Bargaining Agreement in effect.

The audit report indicates that,

> [a]dditional contributions are due because the employer failed to purchase and distribute enough benefit stamps to cover the hours paid for employees . . . [Additionally,] [s]tamps were distributed at times from Francis A. Lee Company in lieu of stamps from Integrated Structures Corp., for hours paid by Integrated Structures Corp. Also[,] at times, stamps from Integrated Structures Corp. were distributed in lieu of stamps from Francis A. Lee Company, for hours paid by Francis A. Lee Company.

The trustees did not submit any information regarding the: (a) experience and qualifications of the auditor(s); (b) hourly rate(s) charged by the auditor(s); (c) number of auditors who conducted the audit; or (d) amount of time the auditor(s) spent performing the audit.

The trustees also seek to recover the costs they incurred in bringing this action. Specifically, the trustees seek to recoup the filing fee they paid to the Clerk of Court, $350.00, and their process server's fee, $42.50. To support these requests, the trustees submitted a receipt from the Clerk of Court, for the filing fee, and an invoice from their process server.

**CONCLUSIONS OF LAW**

When a defendant defaults in an action, the plaintiff's well-pleaded factual allegations are accepted as true, except for those relating to damages. See Greyhound ExhibitGroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992) (stating that "a party's default is deemed to constitute a concession of all well pleaded allegations of liability, [but] it is not considered an admission of damages"). In such a circumstance, the plaintiff is "entitled to all reasonable inferences from the evidence offered." Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).

A plaintiff must establish the amount of damages in a post-default inquest, "unless the amount is liquidated or susceptible of mathematical computation." Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974) (citation omitted). In conducting an inquest, a court need not hold a hearing "as long as it [has] ensured that there was a basis for the damages specified in the default judgment." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) (citation omitted). Correspondingly, in evaluating the fairness of the sum requested, "[a] court may rely on detailed affidavits or documentary evidence." See Fustok v. ContiCommodity Services, Inc., 873 F.2d 38, 40 (2d Cir. 1989).

*Unpaid Benefit Contributions*

ERISA states that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. When an employer fails to meet its ERISA obligations, the Act provides that "[a] civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which

violates any provision of [the] subchapter or terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of [the] subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). ERISA also provides that, "[i]n any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan–

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of –
>> (i) interest on the unpaid contributions, or
>> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.
> For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

29 U.S.C. § 1132(g)(2).

However, "[o]nce the fact of damages has been established, the plaintiff must provide evidence 'from which the amount of damages can be ascertained with reasonable certainly.'" New York City Dist. Council of Carpenters Pension Fund v. Quantum Constr., No. 06 Civ. 13150, 2008 WL 5159777, at *2 (S.D.N.Y. Dec. 9, 2008) (quoting Compania Pelineon De Navegacion, S.A. v. Texas Petroleum Co., 540 F.2d 53, 56 (2d Cir. 1976).

The trustees contend that the defendant owes the trust funds unpaid contributions of $2,734.00. The trustees support this contention by relying on Armao Costa's audit report, covering the period July 1, 2007, to June 30, 2010, which indicates that the defendant failed to contribute $2,734.00 to the trust funds. According to the audit report, the defendant made

payments to the trust funds in the form of "benefit stamps" it gave to its employees during the audited period. However, Armao Costa determined that "additional contributions are due because [ISC] failed to purchase and distribute enough benefit stamps to cover the hours" its employees worked. Based on, <u>inter alia</u>, the audit report, the Court finds that the trust funds are entitled to $2,733.49, the amount of unpaid fringe benefit contributions, for the audited period, calculated without rounding.

***Prejudgment Interest***

"[I]nterest on unpaid contributions shall be determined by using the rate provided under the plan." 29 U.S.C. § 1132(g)(2). Interest on delinquent contributions begins "to accrue when the particular payment becomes delinquent and not sooner." <u>Trustees of the Four Joint Boards Health and Welfare and Pension Funds v. Penn Plastics, Inc.</u>, 864 F. Supp. 342, 348 (S.D.N.Y. 1994). The trust funds' Collection and Audit Procedures indicate that, once a review of the information contained on the employer's hours-worked report discloses a deficiency, the trust funds will consider the employer to be delinquent. Thereafter, the Collection and Audit Procedures provide that a delinquency notice will be sent to the employer, informing it that: (a) delinquent contributions must be received within ten days; and (b) interest shall accrue on the delinquent contributions "from the due date." However, the trustees have failed to indicate when they sent a delinquency notice to the defendant, as required by the Collection and Audit Procedures.

In their proposed findings of fact, the trustees indicate that they "commenced this action only after [their] attempts to contact Defendant INTEGRATED STRUCTURES and resolve this matter without judicial intervention were unsuccessful." Similarly, in their complaint, the trustees maintain that "[d]espite repeated efforts . . . to collect the contributions owed, Defendant

INTEGRATED STRUCTURES remains delinquent in making proper contributions and has failed to pay any portion of the outstanding contributions owed." The above-noted statements do not identify the date(s) on which the defendant was notified of the delinquent contributions; thus, the Court is unable to determine the "due date," from which to calculate interest owed to the trust funds. Based on the trustees' failure to provide the date(s) on which a delinquency notice was provided to the defendant, or, in the alternative, the earliest date the trustees contacted the defendant regarding the unpaid contributions at issue, the Court is unable to determine when interest began to accrue.

*Statutory Damages*

In accordance with ERISA, the trustees are also entitled to statutory damages, in "an amount equal to the greater of – (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount [of unpaid contributions]." 29 U.S.C. § 1132(g)(2)(C). The CBA and trust agreement are silent respecting liquidated damages; accordingly, the trustees have requested statutory damages in an amount equal to the interest on the unpaid contributions. However, for the reasons noted above, the Court is unable to determine the amount of interest on the unpaid contributions that is owed; consequently, the Court is also unable to determine the amount of statutory damages the trustees may recover.

*Attorney's Fees and Costs*

In a successful action to recover unpaid fringe benefit contributions brought "by a fiduciary for or on behalf of a plan," an award of reasonable attorney's fees and costs is mandatory. 29 U.S.C. § 1132(g)(2)(D).

*A.  Attorney's Fees*

In accordance with Second Circuit jurisprudence, a party seeking an award of attorney's fees must support that request with contemporaneous time records establishing "for each attorney [for whom fees are sought], the date [on which work was performed], the hours expended, and the nature of the work done." New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1154 (2d Cir. 1983).  When fixing an appropriate amount to be awarded for attorney's fees, courts in this circuit employ the "presumptively reasonable fee" method.  Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 183-84 (2d Cir. 2008).  In assessing the reasonableness of attorney fees, a party must provide the court with sufficient evidence for it to determine whether the "requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  See Blum v. Stenson, 465 U.S. 886, 896 n.11, 104 S. Ct. 1541, 1547 n.11 (1984).

Applications for attorney's fees that do not contain sufficient evidence to support a finding that the fees sought are reasonable "should normally be disallowed."  Carey, 711 F.2d at 1154.  Accordingly, when an application for attorney's fees is deficient, in that it fails to provide sufficient evidence for a court to perform a reasonableness analysis, as contemplated by Arbor Hill, it may be disallowed, notwithstanding the mandatory language in 29 U.S.C. § 1132(g)(2)(D).  See Plumbers Local No. 371 Joint Plumbing Indus. Bd. Pension Fund v. Frank Liquori Plumbing and Heating, Inc., No. 95-cv-2892, 1996 WL 445065, at *5 (E.D.N.Y. June 26, 1996); see also Ames v. Dynasty Elec., Inc., 05-cv-988, 2008 WL 1924276, at *7 (E.D.N.Y. May 1, 2008).

The trustees seek $ 3,952.25 for the legal services rendered to them by McGuire.  To support that request, the trustees submitted "a synopsis of the hours expended by [McGuire]

representing the Plaintiffs in this action." The "synopsis" identifies the work performed, and the time expended by McGuire. However, the trustees did not submit any evidence to the Court which describes McGuire's experience and qualifications. Without this information, the Court is unable to evaluate whether the hourly rate McGuire charged for the legal services he rendered, is reasonable. See Anschutz Petroleum Marketing Corp. v. E.W. Saybolt & Co., Inc., 112 F.R.D. 355, 359 (S.D.N.Y. 1986) (stating that "the [c]ourt must take into account[,when making an award of attorney's fees,] the complexity of the litigation, the reputation and experience of counsel, his or her professional skill, the time involved, and the results achieved." (citing City of Detroit v. Grinnell Corp., 560 F.2d 1093 (2d Cir. 1977)).

  *B.  Audit Fees*

In an action to recover unpaid fringe benefit contributions, a court may award auditor's fees pursuant to 29 U.S.C. § 1132(g)(2)(E). See, e.g., Virga v. Big Apple Constr. & Restoration Inc., 590 F. Supp. 2d 467, 476 (S.D.N.Y. 2008). "Requests for audit fees are 'generally determined by utilizing the same standards the court applies in awarding attorneys' fees'" Teamsters Local 814 Welfare Fund v. Dahill Moving & Storage Co., Inc., 545 F. Supp. 2d 260, 269 (E.D.N.Y. 2008) (citation omitted). Thus, in order to obtain an award of the audit fees charged to them, the trustees were required to submit competent evidence, that provides an adequate basis on which the Court may rely in determining the reasonableness of the auditor's fees. See Penn Plastics, 864 F. Supp. at 350-51 (refusing to award audit fees because the two-sentence description of the tasks performed by the two auditors provided an insufficient basis upon which to make an award).

The trustees have requested an award of their auditor's fees, which are $626.00. To support this request, the trustees provided the Court with a chart, indicating the amounts that

Armao Costa billed them for the audit, and a copy of the audit report.  However, the materials the trustees submitted, in support of their request for audit fees, lack: (1) any information regarding the experience and qualifications of the auditor(s); (2) the hourly rate(s) charged by the auditor(s); (3) the number of auditors who worked on the matter; and (4) the amount of time expended by the auditor(s) to conduct the audit.  As the reasonableness of the audit fees sought by the trustees is determined by using the same standards that apply to assessing the reasonableness of attorney's fees, see Teamsters Local 814 Welfare Fund, 545 F. Supp. 2d at 267-69, the dearth of information concerning the auditor(s) who provided the relevant services to the trustees prevents the Court from assessing the reasonableness of the fees Armao Costa charged the trustees for those services.

  C.  *Costs*

The trustees request that the filing fee they paid the Clerk of Court, to commence this action, and the fees they paid their process server be awarded to them.  This request is supported by a filing fee receipt from the Clerk of Court, in the amount of $350.00, and their process server's invoice for $42.50.  These costs are reasonable, and recovering them from the defendant is appropriate.

**RECOMMENDATION**

For the reasons set forth above, I recommend that the trustees be awarded: (1) $2,733.49, the unpaid fringe benefits contributions owed to the trust funds; and (2) $392.50, the costs they incurred in connection with commencing this action.  I recommend further that the trustees' request for: (a) attorney's fees; (b) auditor's fees; (c) prejudgment interest on the unpaid contributions; and (d) statutory damages, be denied.  However, the trustees should be granted leave to renew their requests for attorney's fees and auditor's fees, supported by competent evidence sufficient for the court to conclude that the fees sought are reasonable.  In addition, the

trustees should be granted leave to renew their requests for prejudgment interest and statutory damages, accompanied by competent evidence establishing the date: (i) when a delinquency notice was sent to the defendant; or (ii) on which the trustees first contacted the defendant to obtain the delinquent contributions at issue.

### FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Lorna G. Shofield, 40 Centre Street, Room 201, New York, New York 10007, and to the chambers of the undersigned, 40 Centre Street, Room 425, New York, New York 10007. *Any requests for an extension of time for filing objections must be directed to Judge Schofield. Failure to file objections within fourteen (14) days will result in a waiver of objections and will preclude appellate review.* See Thomas v. Arn, 474 U.S. 140, 470 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 58-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated:  New York, New York  
       June 13, 2013

Respectfully submitted,

_Kevin Nathaniel Fox_  
KEVIN NATHANIEL FOX  
UNITED STATES MAGISTRATE JUDGE